**Murray D. GROSS, Plaintiff,**

v.

**The PENN MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 71–898.**

United States District Court,
E. D. Pennsylvania.

March 29, 1973.

Norman M. Berger, Philadelphia, Pa., for plaintiff.

George J. Miller, Philadelphia, Pa., for defendant.

## MEMORANDUM

DITTER, District Judge.

This case comes before the court on defendant's motion for summary judgment. The matter involves the interpretation of a provision for dividends in an annuity policy sold by a mutual insurance company.

On August 2, 1933, the defendant, Penn Mutual Life Insurance Company, issued its Policy No. 1,770,900 [1] to the plaintiff, Murray D. Gross, in return for a premium of $2,500. In December, 1934, and July, 1935, Gross made further premium payments of $25,000. and $22,500. respectively.

Included in the policy are these relevant provisions:

"DIVIDENDS

Dividends of Surplus under this Policy shall be awarded and may be used as provided in Section 1."

"Section 1. PARTICIPATION—DIVIDENDS OF SURPLUS ANNUAL DIVIDENDS. This Policy will participate in surplus prior to the commencement of the life income payments. Dividends will be determined and accounted for by the Company and will be available at the end of each policy-year. . . ."

.  .  .  .  .  .

"Section 7. OTHER PROVISIONS POLICY AND APPLICATION ENTIRE CONTRACT. This policy and the application therefor, a copy of which is attached hereto, constitute the entire contract between the parties . . ."

Each year since 1936, the plaintiff has been notified that he would not receive dividends [2] and, in fact, none were paid. In 1971 he filed this action for an accounting and to require the payment of dividends alleging that under any fair, equitable, intelligent method he should have received $3000. a year for the years between 1936 and the commencement of suit.

The defendant has moved for summary judgment claiming that under its procedures for policy classification and methods of calculation, no dividends were due and that in any event, the claim is barred by laches. In the alternative, Penn Mutual moves for summary judgment covering the period prior to 1965 because the applicable statute of limitations would bar any claim more then six years old.

In an affidavit supporting defendant's motion for summary judgment, Charles E. Rickards, an actuary and former senior vice-president of the defendant, explained Penn Mutual's dividend calculations. He stated that the company's policies are segregated into certain classes, apparently by year of issue, contract type, and age of the insured. The company reviews its record of earnings and financial condition annually, provides for its necessary reserves, and then determines what portion of its remaining funds is available for distribution to its policyholders. Having determined the "divisible surplus," Penn Mutual then uses the "contribution method" to compute the amount payable to each insured. Under the contribution method, a formula is developed and applied to allot the divisible surplus to policyholders in those classes which have contributed to it, in proportion to the contribution which such classes have made. No award is made to those in a class which shows no contribution, or shows a drain on surplus.

Mr. Rickards points out that the contribution method is commonly utilized by both American and Canadian companies. He maintains it is consistent with the decided cases, the provisions of Pennsylvania insurance law, the defendant's charter, and is completely reasonable from the business and actuarial standpoint.

Persuasive as the Company's argument may be, it seems directed at the

---

1. The policy is titled "Optional Deferred Income Policy—Single Premium, Life Income at Age 60 with Refund Settlement—Annual Dividends."

2. The dividend by a mutual insurance company is merely a refund of a premium-overcharge. The overcharge may result from a more favorable insurance experience, better investment returns, or expenses that were lower than anticipated when the amount of the premium was fixed.

interpretation of some other annuity. Nothing in plaintiff's policy, which "constitute[s] the entire contract between the parties," provides that it will be combined with others for dividend purposes. In fact, the use of the term, "this Policy," precludes that idea. A man may be willing to have his chance for premium refunds depend upon the overall strength of his insurer and its experience with him. It does not follow that he is willing to be lumped with some small segment of policyholders and have his financial future be dependent upon the health problems of a group about which he has no knowledge.

There is nothing in "this Policy" to suggest that dividend computation methods used by Canadian or other American companies are to be controlling. There is no mention of accepted business methods, the decided cases, the Company's charter,[3] or the laws of Pennsylvania.[4]

■ This annuity does not say that dividends *may* be awarded. It says that "Dividends of Surplus under this Policy shall be awarded . . ." We are dealing with a·policy that cost $50,000. The last installment, $22,500., was paid in 1935. If "this Policy" has not contributed to divisible surplus since 1936, Mr. Gross is entitled to know why.

The further provisions concerning dividends contained in Section 1 in no way limit Penn Mutual's obligation. Quite to the contrary. Section 1 says that "this Policy will participate in Surplus prior to the commencement of life income payments." Without this statement, it might have been argued that dividends were only to be awarded once the annuity payments had started. Although Section 1 goes on to provide that dividends will be determined "by the Company," there is an obligation to deal with the owner of "this Policy" fairly and equitably, in accordance with the language the Company chose in its agreement with. him. It has not done so and therefore must answer for its breach of contract.

■ Defendant's motion for partial summary judgment is well taken, however. Plaintiff's right of action is restricted by Pennsylvania's statute of limitations for contracts, the Act of March 27, 1713, 12 P.S. § 31, to dividends which accrued no more than six years before suit was started. Although plaintiff argues that the statute does not apply because a corporation holds declared dividends as a trustee for its shareholders, the relationship between a mutual insurance company and its policyholders is governed by the terms of the agreement between them. In this instance, it is a contractual relationship, not that of trustee and beneficiary. See 44 C.J. S. Insurance § 114 p. 674.

---

3. As amended in 1870, Section 3 of Penn Mutual's charter provides: "That in lieu of the manner of returning the surplus to insured members, as directed by section fourteenth of the original charter, it shall and may be lawful for said company to return the same . . . in such sums as may express the equitable proportion of the aggregate surplus to which *each member* is entitled, according to the actual value of the premiums paid, which sums shall be credited to *the insured* . . . " (emphasis added) There is no reference to policy classes or to the contribution method. The use of the terms, "each member" and "the insured," suggests individual apportionment of sur-

plus rather than some plan to place policies into a batch for dividend allocation.

4. Section 410B of The Insurance Company Law of 1921, The Act of May 17, 1921, P.L. 682, as amended, 40 P.S. § 510a provides, "No annuity . . . shall be delivered in this Commonwealth . . . unless it contains in substance the following . . . (e) . . . a provision that the divisible surplus shall be apportioned annually, and dividends shall be payable in cash or shall be applicable to any stipulated payment or payments to the company under the contract." There is no reference to policy classes or the contribution method.